```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                Case No. 20-cr-0097
 5      -vs-

 6  JAVIER E. ROJAS DA SILVA,

 7                          Defendant.

 8  ------------------------------------x

 9                               United States Courthouse
                                 White Plains, New York
10                               February 5, 2020
                                 12:46 p.m.
11

12  Before:
              HONORABLE VINCENT L. BRICCETTI
13
                                 District Judge
14

15  APPEARANCES

16  GEOFFREY S. BERMAN
         United States Attorney for the
17       Southern District of New York
    BY:  MATHEW ANDREWS
18       Assistant United States Attorney

19  LAW OFFICES OF MARK S. DeMARCO
    BY:  MARK S. DeMARCO
20  and
    FEDERAL DEFENDERS OF NEW YORK, INC.
21  BY:  JASON I. SER
    Attorneys for the Defendant
22
    ALSO PRESENT:
23
    PETER ANDERSON, Court Interpreter (Spanish)
24

25
```

PROCEEDINGS                                    2

```
 1              THE DEPUTY CLERK:  United States of America against

 2    Javier Rojas Da Silva.

 3              Will counsel please note their appearance for the

 4    record?

 5              MR. ANDREWS:  Good afternoon, Your Honor.  Mathew

 6    Andrews for the government.

 7              MR. SER:  Good afternoon, Your Honor.  Jason Ser,

 8    Federal Defenders for Mr. Da Silva, who is present in custody

 9    and being assisted by the Spanish interpreter.

10              MR. DeMARCO:  Your Honor, Mark DeMarco for Mr. Da

11    Silva as well.

12              THE COURT:  Okay.  Welcome, everybody.  Have a seat.

13              Mr. Da Silva, first of all, are you able to understand

14    the interpreter?

15              THE DEFENDANT:  (In English) Yes, Your Honor.

16              (Through interpreter) Yes, Your Honor.

17              THE COURT:  Do you speak English?

18              MR. SER:  He speaks some English, Your Honor, but he

19    is not a hundred percent fluent, so we prefer to do everything

20    through the interpreter to ensure he understands what's going

21    on.

22              THE COURT:  Okay.  Fair enough.  I will do it that

23    way.  All right.  Have a seat.

24              So since you are here, I am guessing that this matter

25    was wheeled out to me today in front of the magistrate judge,
```

PROCEEDINGS                                        3

```
 1  and that the defendant has waived Indictment and entered a pro
 2  forma -- well, entered a plea of not guilty to an Information.
 3  Is that correct, Mr. Ser?
 4            MR. SER:  Yes, Your Honor.
 5            THE COURT:  Does your client have an application?
 6            MR. SER:  Yes, Your Honor.  At this time, Mr. Da Silva
 7  requests the Court allocute him on a plea of guilty to the lone
 8  count of the Information in 20-cr-97, so that he may change his
 9  plea from not guilty to guilty.
10            THE COURT:  Okay.  Fair enough.  And this is pursuant
11  to a plea agreement dated February 4th, 2020; is that correct?
12  That's what I have, anyway.
13            MR. SER:  Yes, Your Honor.
14            THE COURT:  All right.  Okay.
15            Mr. Da Silva -- by the way, Mr. Ser, I notice that in
16  the Information his name is Javier Enrique Da Silva Rojas.  He
17  would prefer to be referred to as -- or to be identified as
18  "Mr. Da Silva;" is that correct?
19            THE DEFENDANT:  Yes, Your Honor.
20            THE COURT:  Okay.  So, Mr. Da Silva, I have been
21  informed that you wish to plead guilty to Count One of a felony
22  Information under docket number 20-cr-97; is that correct?
23            THE DEFENDANT:  Yes, Your Honor.
24            THE COURT:  Now, before I can accept your guilty plea,
25  I need to ask you certain questions, and it's very important
```

1  that you answer these questions honestly and completely, and I

2  am doing this because I need to make sure that you understand

3  your rights and that you are pleading guilty voluntarily and of

4  your own free will.  I also want to make sure that you are

5  pleading guilty because you are guilty and not for some other

6  reason, and that you fully understand the consequences of your

7  plea.

8          So if at any point during the proceedings today you do

9  not understand my questions or you want to speak to your lawyer,

10  please just tell me that, and I will let you do -- I will let

11  you speak to your lawyer.  The point is, it's very important for

12  you to understand every question before you answer it.  Okay?

13  So if you don't understand it, let me know, and either I will

14  explain it or I will let you speak to your lawyers.  Is that

15  okay?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  At this time, I am going to place you

18  under oath.

19          Ms. Hilbert, would you swear the defendant?

20          THE DEPUTY CLERK:  Certainly.

21  JAVIER ENRIQUE ROJAS DA SILVA, having been duly sworn, testified

22  as follows:

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Okay.  Mr. Da Silva, you are now under

25  oath, and what that means is that if you answer any of my

1  questions falsely, you could later be prosecuted for perjury or

2  for making a false statement.  Do you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  You can have a seat.

5          Mr. Da Silva, what is your full name?

6          THE DEFENDANT:  Javier Enrique Da Silva Rojas.

7          THE COURT:  How old are you, sir?

8          THE DEFENDANT:  I am 25 years old.

9          THE COURT:  And how far did you go in school?

10         THE DEFENDANT:  College.

11         THE COURT:  Okay.  So you graduated high school?  And

12  you have some college?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  I am sorry, Peter.  I apologize.

15         Did you graduate from college?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Where did you go to college?

18         THE DEFENDANT:  In Venezuela.

19         THE COURT:  Are you currently or have you recently

20  been under the care of a doctor or a psychiatrist for any

21  reason?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Have you ever been treated or hospitalized

24  for any mental illness or mental health problem, ever?

25         THE DEFENDANT:  No, Your Honor.

PROCEEDINGS

```
 1            THE COURT:  Have you ever been treated or hospitalized
 2  for any drug problem or alcohol abuse or addiction?
 3            THE DEFENDANT:  No, Your Honor.
 4            THE COURT:  In the last 24 hours, have you taken any
 5  drugs?
 6            THE DEFENDANT:  No, Your Honor.
 7            THE COURT:  Have you taken any medicine or pills in
 8  the last 24 hours?
 9            THE DEFENDANT:  No, Your Honor.
10            THE COURT:  And have you consumed any alcohol in the
11  last 24 hours?
12            THE DEFENDANT:  No, Your Honor.
13            THE COURT:  Is your mind clear today?
14            THE DEFENDANT:  Yes, Your Honor.
15            THE COURT:  Do you understand what is happening here
16  today?
17            THE DEFENDANT:  Yes, Your Honor.
18            THE COURT:  Have you had enough time and opportunity
19  to discuss your case with your attorneys?
20            THE DEFENDANT:  Yes, Your Honor.
21            THE COURT:  Have you discussed with them the charges
22  against you, including any possible defenses that you might
23  have?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Have you discussed with them the
```

PROCEEDINGS

1  consequences of entering a plea of guilty?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And are you satisfied with your attorneys'

4  representation of you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Does either counsel have any doubt as to

7  the defendant's competence to plead guilty at this time?

8          MR. ANDREWS:  No, Your Honor.

9          THE COURT:  Mr. Ser?

10          MR. SER:  No, Your Honor.

11          THE COURT:  Okay.  Based on the defendant's responses

12  to my questions and my observations of his demeanor, I find that

13  he is fully competent to enter an informed guilty plea at this

14  time.

15          And again, Mr. Ser, he has already waived Indictment,

16  correct?

17          MR. ANDREWS:  That is correct, Your Honor.

18          THE COURT:  Mr. Da Silva, I am now going to explain

19  certain rights that you have under the Constitution and laws of

20  the United States.  These are rights that you will be giving up

21  if you enter a guilty plea.  So, again, please tell me if there

22  is anything you don't understand, and either I or your attorney

23  will explain the matter more fully.

24          First of all, you have the right to plead not guilty

25  to the charge contained in this Information, or persist in your

1  previously entered plea of not guilty.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And if you plead not guilty, then you have

4  the right to a speedy and public trial by an impartial jury on

5  the charges contained in the Indictment.  Do you understand

6  that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  At that trial, you would be presumed to be

9  innocent, and the government would be required to prove you

10  guilty by competent evidence beyond a reasonable doubt before

11  you could be found guilty.  What that means is that you would

12  not have to prove that you were innocent.  Do you understand

13  that?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  If there were a jury trial, you could not

16  be convicted unless a jury of 12 people unanimously agree that

17  you were guilty beyond a reasonable doubt.  Do you understand

18  that?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  At that trial, and at every other stage of

21  the case, you would have the right to be represented by an

22  attorney, and if you could not afford an attorney, the Court

23  would appoint one, or in this case, two, to represent you.  Do

24  you understand that?

25              THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  During a trial, the witnesses for the

2   government would have to come to court and testify in your

3   presence, and your lawyer could confront and cross-examine those

4   witnesses and object to evidence offered by the government.  Do

5   you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  At a trial, your lawyer could also offer

8   evidence on your behalf, and you would have the right to use

9   subpoenas to compel witnesses to testify and to obtain evidence

10  to be offered in your defense.  Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  At a trial, you would have the right to

13  testify if you chose to do so, but you would also have the right

14  not to testify; and if you chose not to testify, that could not

15  be used against you in any way.  No inference or suggestion of

16  guilt could be drawn from the fact that you did not testify.  Do

17  you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  If you were convicted at a trial, you

20  would have the right to appeal that verdict to a higher court.

21  Do you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And you also understand that even now you

24  have the right to change your mind.  In other words, you could

25  persist in your previously-entered not guilty plea, and you can

 1  go to trial.  Do you understand that?

 2          THE DEFENDANT:  Yes, Your Honor.

 3          THE COURT:  But if you do plead guilty, and if I

 4  accept your plea, you will be giving up your right to a trial

 5  and all the other rights that go with it that I have just

 6  described other than the right to an attorney.  If you plead

 7  guilty, there will be no trial, and I will enter a judgment of

 8  guilty and sentence you on the basis of your guilty plea after I

 9  consider a presentence report prepared by the probation

10  department and any -- and also consider any submissions that I

11  get from you, your lawyer and the government.

12          Do you understand all of that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Finally, if you do plead guilty, you will

15  also be giving up your right not to incriminate yourself, and I

16  will ask you questions about what you did in order to satisfy

17  myself that you are, in fact, guilty as charged.  Do you

18  understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  Have you received a copy of the

21  Information?  Again, it's 20-cr-97.

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Have you read the Information?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Did you do that with the assistance of the

1   interpreter?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  And have you discussed the information

4   with your attorneys with the assistance of the interpreter?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Do you understand that you were charged in

7   Count One of the Information?  It's the only count.  There is

8   only one count.  You are charged with kidnapping, and

9   specifically, you are charged with unlawfully confining and

10  abducting and carrying away, et cetera, another person; and that

11  that person was willfully transported in interstate commerce,

12  and then, specifically that you kidnapped a woman by the name of

13  Valerie Reyes in New Rochelle, New York.  This was on or about

14  January 28, 2019; that you bound her feet and hands; that you

15  placed packing tape over her mouth; put her in a suitcase and

16  transported her from New Rochelle to Greenwich, Connecticut

17  where you disposed of her body.

18          Do you understand that that's what you're charged

19  with?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Mr. Andrews, could you tell me the

22  essential elements of the offense charged in Count One?

23          MR. ANDREWS:  In order to prove the defendant guilty

24  to Count One, kidnapping in violation of 18 United States Code

25  1201(a)(1), the government would have to prove each of the

1   following elements beyond a reasonable doubt:  First, the victim

2   was seized, confined, inveigled, decoyed, kidnapped, abducted or

3   carried away.

4          Second, the victim was held for ransom, reward, or

5   otherwise.

6          Third, that the victim was transported in interstate

7   or foreign commerce, traveled in interstate or foreign commerce

8   or mail or any means of -- means, facility or instrumentality of

9   interstate or foreign commerce, was used in committing or in

10  furtherance of the offense.

11         And fourth, that the defendant acted knowingly,

12  willingly, and unlawfully.

13         In addition, the government would also be required to

14  demonstrate by a preponderance of the evidence that venue is

15  proper in the Southern District of New York.

16         THE COURT:  Okay.  Thank you, Mr. Andrews.

17         Mr. Da Silva, do you understand that if you did not

18  plead guilty to Count One, the government would have to prove

19  each and every element of that charge beyond a reasonable doubt

20  at trial?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  By the way, Mr. Andrews, I think you said

23  "willingly."  Did you mean to say willfully for the fourth

24  element?  Knowingly, willfully and unlawfully?

25         MR. ANDREWS:  That is correct, Your Honor.

```
 1            THE COURT:  All right.  So the fourth element is that
 2  the defendant acted knowingly, willfully and unlawfully; is that
 3  correct?
 4            MR. ANDREWS:  That's correct, Your Honor.
 5            THE COURT:  Again, Mr. Da Silva, do you understand
 6  that if you did not plead guilty to Count One, the government
 7  would have to prove each and every element of that charge beyond
 8  a reasonable doubt at trail, including the element that I just
 9  mentioned, that you acted knowingly, willfully and unlawfully?
10            THE DEFENDANT:  Yes, Your Honor.
11            THE COURT:  All right.  I am now going to tell you
12  about the possible maximum penalty for that offense as follows:
13  The maximum term of imprisonment here is life in prison.  There
14  is a maximum term of supervised release of five years.  There is
15  a maximum fine -- again, these are all possible maximums -- of
16  the greatest of $250,000 or twice the gross pecuniary gain
17  derived from the offense or twice the gross pecuniary loss to
18  persons other than you resulting from the offense; and finally,
19  there is a $100 mandatory special assessment that applies in
20  every case.
21            Do you understand that these are the maximum possible
22  penalties for this offense?
23            THE DEFENDANT:  Yes, Your Honor.
24            THE COURT:  And there is no mandatory minimum in this
25  case; is that right, Mr. Andrews?
```

1          MR. ANDREWS:  That's correct, Your Honor.

2          THE COURT:  All right.  And also, Mr. Da Silva, under

3    the law, I can also -- I can order you to pay restitution to any

4    person or entity injured as a direct result of your criminal

5    conduct.  Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And, Mr. Andrews, is the government going

8    to be seeking restitution in this case?  And if so, for what?  I

9    don't see it specifically mentioned in the plea agreement, but

10   there is no question that restitution is a possible punishment.

11         MR. ANDREWS:  It's not in the plea agreement, you are

12   correct, Your Honor.  However, it is set forth within -- we

13   believe that the evidence will show at the time of sentencing

14   that the defendant did take a substantial quantity of money from

15   the victim.  So restitution would be appropriate within the

16   Court's authority.

17         THE COURT:  Could you put an approximate number on

18   that?

19         MR. ANDREWS:  Within the range of 5 to $10,000, Your

20   Honor.

21         THE COURT:  Okay.  Is that your understanding as well,

22   Mr. Ser, that there is a potential restitution judgment here up

23   to $10,000?

24         MR. SER:  Yes, Your Honor.

25         THE COURT:  All right.

1              Okay.  So, again, Mr. Da Silva, do you understand that

2   I could order you to pay restitution in this case?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And I mentioned supervised release a

5   minute ago, and that means that if I subject you to prison to be

6   followed by a term of supervised release, you will be subject to

7   supervision by the probation department after your release from

8   prison; and if you violate any of the conditions of supervised

9   release that would apply, the term of supervised release could

10  be revoked, and you could be returned to prison without a jury

11  trial to serve additional time even beyond your original

12  sentence.  If that happened, you would not be given credit for

13  the time served in prison on your original sentence or for any

14  time spent on supervised release.  Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  You should also understand that parole has

17  been abolished in the federal system, so if you are sentenced to

18  prison, you will not be released early on parole.  Do you

19  understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Now, Mr. Da Silva, are you a United States

22  citizen?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  What is your immigration status if you

25  know?  Do you have a green card?  Are you here without

1  documents?  If you know.

2            Do you know, Mr. Ser?

3            MR. SER:  Yes, Your Honor.  He overstayed a visa.

4            THE COURT:  So he was here on a visa, and then he

5  overstayed it?

6            MR. SER:  Correct.

7            THE COURT:  Is that correct, Mr. Da Silva?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Do you understand that in all likelihood

10 you will be deported from the United States after you complete

11 service of your sentence?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  And do you also understand that if, for

14 some reason, you are not deported from the United States after

15 serving your sentence, or if after you serve your sentence, you

16 are held in the U.S. pending deportation, you will still be

17 subject to supervised release?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Do you understand that if you are

20 deported, returning to the United States during your period of

21 supervised release without permission from the Secretary of the

22 U.S.  Department of Homeland Security, would not only be a

23 separate crime, but it would also be a violation of your

24 conditions of supervised release, and you could be sent back to

25 prison without a trial?  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And do you understand that the same would

3    be true of any crime committed while in custody pending

4    deportation?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do you further understand that if I accept

7    your guilty plea and adjudge you guilty, that adjudication may

8    deprive you of valuable civil rights such as the right to vote,

9    the right to hold public office, the right to serve on a jury,

10   the right to possess any kind of firearm, and the right to hold

11   certain professional licenses?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Mr. Ser, have you advised the defendant

14   about the possible immigration consequences of entering a plea

15   of guilty to the charge of Count One of the Information?

16         MR. SER:  I have.

17         THE COURT:  And have you told him that deportation is

18   likely after completion of service of his sentence?

19         MR. SER:  Yes.

20         THE COURT:  All right.  Mr. Da Silva, has your lawyer

21   advised you as to the possible immigration consequences of your

22   plea?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  And do you understand that there could be

25   adverse immigration consequences, including deportation or

1   denial of citizenship or denial of admission to the United

2   States in the future as a result of your guilty plea?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand that if there are

5   adverse immigration consequences as a result of your guilty

6   plea, you will not be able to withdraw your plea?  In other

7   words, you won't be able to take it back, and you also won't be

8   able to appeal or otherwise challenge your conviction on the

9   basis of those immigration consequences?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Just one second.

12          Now, have you talked to your lawyer about how the

13   federal sentencing guidelines apply to your case?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And I need to tell you that in determining

16   the sentence to impose, I am required to consider the

17   guidelines, which are a set of rules and recommendations for

18   determining an appropriate sentence.  I have to calculate the

19   applicable guideline range.  I have to consider that range, and

20   I have to determine whether there should be an upward or

21   downward departure from that range.

22          In addition, I am required to consider the sentencing

23   factors set forth in Section 3553(a) of Title 18 of the United

24   States Code and to impose a sentence that I believe best

25   satisfies the purposes of the criminal law, even if that

PROCEEDINGS                                    19

1  sentence is higher or lower than what the guidelines recommend.

2  Do you understand all of that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And do you also understand that I will not

5  be able to determine how the guidelines apply to your case until

6  after the presentence report has been prepared by the probation

7  office, and both you and the government have had a chance to

8  review, comment on, and object to anything in the report?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you also understand that if your

11  attorney or anyone else has attempted to predict what your

12  sentence will be, that prediction could be wrong?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And I am telling you this because you need

15  to understand that no one, not even your attorney or the

16  government's attorney, can be sure now what your sentence will

17  be.  It's my job to decide what your sentence will be, and I am

18  not going to do that now.  Instead, I am going to wait until

19  after the presentence report is completed and after I have ruled

20  on any challenges to the report, calculated the range,

21  determined whether there are grounds to depart and considered

22  the Section 3553(a) factors.

23          So at this point, nobody can predict what the sentence

24  will be in your case.  Do you understand that?

25          THE DEFENDANT:  Yes, Your Honor.

 1              THE COURT:  Do you also understand that even if your

 2    sentence is different from what your attorney or anyone else

 3    told you it might be, or if it's different from what you

 4    expected it to be or from what's contained in your plea

 5    agreement, once you have pleaded guilty, you will not be allowed

 6    to withdraw your plea?

 7              THE DEFENDANT:  Yes, Your Honor.

 8              THE COURT:  Has anyone threatened you or coerced you

 9    in any way or tried to force you to plead guilty?

10              THE DEFENDANT:  No, Your Honor.

11              THE COURT:  And has anyone other than the prosecutor

12    promised you anything or offered you anything in order to get

13    you to plead guilty?

14              THE DEFENDANT:  No, Your Honor.

15              THE COURT:  I have been given a letter dated

16    February 4th, 2020, from the government's attorney to your

17    attorney, which is a plea agreement between you and the

18    government, and in a moment I will have it marked as Court

19    Exhibit 1, but first I am going to have my clerk verify that

20    your signature appears on page 7 of the agreement.

21              THE DEPUTY CLERK:  Mr. Da Silva, is that your original

22    signature signed today, February 5th, 2020?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Mr. Da Silva, did you read this agreement

25    before you signed it with the assistance of the interpreter?

PROCEEDINGS

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  Did you discuss it with your attorneys
 3  before you signed it?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  Did you discuss every aspect of it?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  And did you understand the agreement at
 8  the time you signed it?
 9              THE DEFENDANT:  Yes, Your Honor.
10              THE COURT:  Is this plea agreement the entire
11  agreement between you and the government?
12              THE DEFENDANT:  Yes, Your Honor.
13              THE COURT:  Is there any other agreement, promise or
14  understanding between you and the government that's been left
15  out of the agreement?
16              THE DEFENDANT:  No, Your Honor.
17              THE COURT:  Did anyone threaten you or coerce you or
18  force you to enter into the plea agreement?
19              THE DEFENDANT:  No, Your Honor.
20              THE COURT:  And other than what's contained in the
21  plea agreement, has anyone promised you anything or offered you
22  any inducement to plead guilty or to enter into the plea
23  agreement?
24              THE DEFENDANT:  No, Your Honor.
25              THE COURT:  Has anyone made you a promise as to what
```

1  your sentence will actually be?

2          THE DEFENDANT:  No, Your Honor.

3          (Court Exhibit 1 in Evidence)

4          THE COURT:  Now, it appears that both and you the

5  government have stipulated to, which simply means agreed to, the

6  appropriate calculation of your sentencing range under the

7  guidelines; is that correct?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And according to the stipulation, the

10 agreed-upon sentencing range is 360 months to life imprisonment.

11 In other words, 30 years to life is the agreed-upon sentencing

12 range.

13         Do you understand that the guidelines stipulation in

14 the plea agreement is binding on you, and it's binding on the

15 government, but it's not binding on me?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Do you understand that regardless of what

18 you and the government have agreed to, I am going to make my own

19 determination of your guideline range?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Do you understand that under certain

22 circumstances, both you and the government have the right to

23 appeal any sentence that I might impose subject to the terms of

24 the plea agreement?

25         THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  And there appears to be on page 4 of the

2   agreement what lawyers call an appeal waiver provision.  Do you

3   understand that under the plea agreement you are giving up your

4   right to appeal or otherwise challenge your sentence so long as

5   I sentence you to life imprisonment, which is the top of the

6   range, or less?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  And there is no forfeiture provision in

9   this case, correct?

10          MR. ANDREWS:  That's correct, Your Honor.

11          THE COURT:  All right.  Mr. Da Silva, have you clearly

12  understood everything that has happened here so far today?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Now that you have been advised of the

15  charge against you, the possible penalties that you face, and

16  the rights you are giving up, is it still your intention to

17  plead guilty to Count One of the Information?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  With respect to Count One of the

20  Information, how do you now plead, guilty or not guilty?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  Are you, in fact, guilty of that charge?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And are you pleading guilty voluntarily

25  and of your own free will?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Okay.  Mr. Andrews, would you please

3 summarize what the government would expect to prove if this case

4 went to trial?

5           MR. ANDREWS:  The government's proof at trial would

6 consist of the following:  First, witness testimony that the

7 defendant and the victim dated from in or about January 2018 to

8 April 2018, after which the victim ended the relationship.

9           Second, witness testimony and bank records showing

10 that the defendant used the victim's debit card without

11 authorization in or about September 2018, approximately five

12 months prior to the kidnapping.

13          Third, surveillance footage showing that on or about

14 January 28th, the defendant left his apartment and rented a

15 vehicle.

16          THE COURT:  That's 2019?

17          MR. ANDREWS:  2019, Your Honor.

18          THE COURT:  Go ahead.

19          MR. ANDREWS:  Fourth, Google location data and cell

20 site data showing that the defendant then drove to New Rochelle

21 and turned his phone on airplane mode approximately 200 feet

22 from the victim's home.

23          Fifth, bank records showing that several hours later,

24 someone accessed the victim's Chase Bank application on her

25 phone using the victim's thumbprint and checked her account

1   balance.

2            Sixth, bank records and surveillance footage showing

3   that approximately 30 minutes later, an individual dressed

4   entirely in black, who would be proven at trial was the

5   defendant, withdrew a thousand dollars from the victim's bank

6   account from a nearby ATM.

7            Seventh, cell site data showing that the defendant

8   then traveled to Greenwich, Connecticut and back to New York.

9            Eighth, bank records and surveillance footage showing

10  that over the next several days an individual, who would be

11  proven at trial was the defendant, withdrew approximately $5,350

12  from the victim's bank account using the victim's debit card.

13           Ninth, witness testimony that the victim's body was

14  found in a suitcase dumped next to the road in Greenwich,

15  Connecticut several days later on or about February 5th, 2019.

16  The victim's mouth was covered with several layers of packing

17  tape, and her feet and hands were bound with packing tape and

18  twine.  The victim additionally had a number of injuries,

19  including a large bruise on her forehead, as well as various

20  abrasions on her face and hemorrhages to her scalp.

21           Tenth, testimony from the Connecticut Medical

22  Examiner's office that the victim died of homicidal

23  asphyxiation.

24           Eleventh, records showing that the same day that the

25  victim's body was found, the defendant re-rented the same

 1  vehicle that he had used to drive to the victim's home and drove

 2  it to the vicinity of a car wash.

 3          Twelve, statements from the defendant during his post

 4  arrest interview that he traveled to the victim's apartment on

 5  the night in question, bound her while she was still alive, and

 6  withdrew money from her bank account during the next several

 7  days.

 8          Thirteen, DNA evidence showing that the defendant's

 9  DNA was under the fingernails of the victim when she was found.

10          Fourteen, witness testimony and photos recovered from

11  the defendant's phone showing the defendant had several injuries

12  the day after the kidnapping, including a laceration below his

13  left eye.

14          Fifteen, text messages from the defendant's phone

15  showing that during the days after the kidnapping, the defendant

16  stole -- sold an iPad that he had stolen from the victim's house

17  on the night of the kidnapping, and a photo of the defendant

18  posing with a computer television that he received in return for

19  the stolen iPad.

20          THE COURT:  Okay.  Thank you, Mr. Andrews.

21          Mr. Da Silva, did you hear what the prosecutor just

22  said?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Is it substantially accurate?

25          THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  Okay.  I need you now to tell me in your
 2  own words what you did to make you believe that you are guilty
 3  of this offense.
 4              And is the defendant planning to read a statement, Mr.
 5  Ser?
 6              MR. SER:  Yes, Your Honor.
 7              THE COURT:  Is this a statement you prepared working
 8  with him?
 9              MR. SER:  Yes, Your Honor.
10              THE COURT:  I just want to make sure it's his
11  statement ultimately.
12              MR. SER:  It is, Your Honor.
13              THE COURT:  Mr. Da Silva, are you going to read from a
14  statement in response to my question about telling me what you
15  believe you did that makes you guilty of this offense?
16              THE DEFENDANT:  Yes, Your Honor.
17              THE COURT:  Did you prepare that statement with the
18  assistance of your lawyers?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  Okay.  Go ahead.
21              THE DEFENDANT:  From on or about January 28, 2019, to
22  on or about January 29, 2019, in New Rochelle, New York -- in
23  New Rochelle, New York, after a violent struggle in her
24  apartment while Valerie Reyes was still alive, I bound her feet
25  and hands, placed tape over her mouth, put her in a suitcase,
```

 1  and transported her to Greenwich, Connecticut where I disposed
 2  of her body.  My above actions, which I knew to be illegal,
 3  resulted in the death of Ms. Reyes.
 4           THE COURT:  Okay.  I have a couple of questions,
 5  Mr. Da Silva.
 6           First of all, just tell me again where -- where was
 7  Ms. Reyes' apartment in which you had this violent struggle?
 8  What town or city?
 9           THE DEFENDANT:  In New Rochelle.
10           THE COURT:  Here in Westchester County?
11           THE DEFENDANT:  Yes, Your Honor.
12           THE COURT:  And after you put Ms. Reyes in the
13  suitcase, you took her to Connecticut.  Where in Connecticut?
14           THE DEFENDANT:  Greenwich, Connecticut.
15           THE COURT:  Mr. Ser, could you just help me out maybe
16  with the second element as described by Mr. Andrews earlier?
17  Namely -- this is a paraphrase, of course -- that the victim was
18  held -- held for ransom and reward and otherwise.  Or otherwise.
19  What are the facts that meet that element?
20           MR. SER:  Your Honor, as he allocuted and explained,
21  he taped her hands together and ankles and covered her mouth in
22  order to be able to avoid arrest and prosecution by preventing
23  her from alerting authorities to the events that occurred in the
24  apartment.
25           THE COURT:  And that's being held for ransom or reward

1  or otherwise?

2           MR. SER:  Or otherwise.

3           THE COURT:  Okay.  So what you are saying is that by

4  binding and gagging Ms. Reyes and putting her in the suitcase,

5  he not only carried her away, but he held her for otherwise,

6  meaning for some other benefit, namely not being arrested or

7  having his crimes detected?

8           MR. SER:  Correct, Your Honor.

9           THE COURT:  Do you agree that's sufficient to meet

10 that element of the -- I don't have the problem with the other

11 elements -- is that sufficient to meet that element of the

12 statute?

13          MR. ANDREWS:  Yes, Your Honor.  Our understanding

14 under the Second Circuit case law is it doesn't have to be a

15 monetary benefit for it to reach the otherwise requirement.

16 That standard is actually deliberately quite, quite low in the

17 context of the kidnapping statute, and this would be sufficient.

18          THE COURT:  Right.  I mean, obviously, I am asking --

19 well, I am asking the question because I want to make sure that

20 we are covering all the elements, but also, this is not,

21 strictly speaking, a homicide charge.  This is a kidnapping

22 charge.  If it was a homicide charge, we probably wouldn't have

23 this conversation, but it's a kidnapping charge.

24          But you agree that the statements that Mr. Da Silva

25 made are sufficient to meet the element about being held for

1   ransom or reward or otherwise?

2           MR. ANDREWS:  Yes, Your Honor.

3           THE COURT:  And you agree with that as well, Mr. Ser?

4           MR. SER:  I do.

5           THE COURT:  Mr. Da Silva, did you know that at the

6   time you were doing these things that you told me about, that

7   what you were doing was wrong and against the law?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Did anyone threaten you or coerce you or

10  force you to do these things?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Mr. Andrews, do you believe there is a

13  sufficient factual predicate for the guilty plea as to all of

14  the elements?

15          MR. ANDREWS:  Yes, Your Honor.

16          THE COURT:  Do you agree with that, Mr. Ser?

17          MR. SER:  Yes, Your Honor.

18          THE COURT:  Are there any additional questions that

19  either of you would like me to ask the defendant?

20          Mr. Andrews?

21          MR. ANDREWS:  Your Honor, just out of an abundance of

22  caution, if you wouldn't mind allocuting the defendant on one

23  specific provision within the plea agreement, which is located

24  on page 5?

25          THE COURT:  Yes.  I'm happy to do that.  Tell me what

1    that is.

2          MR. ANDREWS:  So that provision in the plea agreement,

3    which the plea agreement asserts that it is very likely that the

4    guilty plea and conviction will make deportation from the United

5    States presumptively mandatory.  I believe the Court has

6    informed that there could be deportation, but the government is

7    asserting that it's very likely.

8          THE COURT:  Just tell me where.  I am looking at

9    page 5.

10         MR. ANDREWS:  It's page 5, the --

11         THE COURT:  The really long paragraph in the middle

12   that has about 500 words in it?  That one?

13         MR. ANDREWS:  Yes.

14         THE COURT:  All right.  Let me see if I can find that

15   one.  Hold on one second.

16         I think I asked him or I said to him before, are you

17   aware that it's likely that you will be removed?  The only --

18   and he said yes.  And you are asking me to ask him whether he

19   understands that it's very likely that he will be removed?

20         MR. ANDREWS:  It's out -- it's out of an abundance of

21   caution, Your Honor, just because the terminology -- at one

22   point Your Honor said that he could be deported; just so that

23   the defendant is aware of what the government's position is.

24         THE COURT:  No problem.

25         Mr. Da Silva, do you understand that your guilty plea

1   in this case, assuming I accept the guilty plea, makes it very

2   likely that you will be removed from the United States, indeed,

3   that your removal is presumptively mandatory?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Thank you.  And also that, at a minimum,

6   you are at risk of being removed or suffering other adverse

7   immigration consequences?  Do you understand all of that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  There is actually something else I wanted

10  to allocute him about that's in the plea agreement if you just

11  give me a second.

12             On page 3 of the plea agreement, it says, and I quote,

13  "The parties agree that, one, the defendant will not seek a

14  sentence or otherwise suggest in any way that the probation

15  office or the Court consider a sentence of less than 360 months'

16  imprisonment; and two, unless this office," meaning the U.S.

17  Attorney's office, "learns of new information regarding the

18  defendant's conduct, including conduct after the execution of

19  the plea agreement, this office will not seek a sentence or

20  suggest in any way that the probation office or the Court

21  consider a sentence of more than 360 months' imprisonment."

22             And then it has the following sentence:  "The parties

23  understand that this agreement reflects the special facts of

24  this case and is not intended as precedent for other cases."

25             So, first of all, Mr. Ser, did you go over this

1  paragraph line by line and word for word with your client?

2          MR. SER:  Yes, Your Honor, with the assistance of the

3  interpreter.

4          THE COURT:  All right.  Mr. Da Silva, is that correct,

5  that you reviewed this particular language that I've just quoted

6  with your attorney and with the assistance of the interpreter?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you understand that what that means

9  is that you are agreeing -- and, again, this is an agreement

10 between you and the government.  It's not -- I don't -- I am not

11 a party to this agreement, but you and the government have

12 agreed -- this is the relevant part here -- you and the

13 government have agreed that you will not even ask for a sentence

14 of less than 30 years in prison?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  While we are on the subject of the

17 guidelines, on page 2 of the plea agreement, it says that the

18 applicable guideline is Section 2A1.1, and the base offense

19 level is 43 because death resulted from the offense charged in

20 Count One.

21         Again, this is the same question.  Did you discuss

22 this provision in the plea agreement line by line and word for

23 word with your client?

24         MR. SER:  Yes, Your Honor, with the assistance of the

25 interpreter.

1              THE COURT:  And, Mr. Da Silva, did you discuss that

2   provision with your attorney?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And the next paragraph, paragraph 4 on

5   page 2 says that, "The parties agree that the defendant

6   willfully obstructed or impeded or attempted to obstruct and

7   impede the administration of justice during the course of the

8   investigation, and that that obstructive conduct related to the

9   defendant's offensive conviction and any relevant conduct, and

10  therefore, the offense level is increased by two levels."

11             What was his conduct after the offense was committed

12  that constitutes obstruction of justice?  Just tell me what that

13  is, Mr. Andrews.

14             MR. ANDREWS:  That was when the defendant re-rented

15  the vehicle that he had originally driven to the victim's house,

16  Your Honor.  We believe that the evidence shows that he took it

17  to a car wash and subsequently cleaned the vehicle in order to

18  prevent law enforcement from finding anything inside it that

19  would connect him to the kidnapping.

20             THE COURT:  Just curious, how does one re-rent the

21  exact same car that you rented before?

22             MR. ANDREWS:  There is a specific vehicle service that

23  he was using, and you can choose your vehicle.  He had

24  apparently rented that vehicle several times in the past, and he

25  simply just chose it again.

```
 1              THE COURT:  Do you agree with that, Mr. Ser, that
 2   that's the basis for the obstruction of justice enhancement
 3   here?
 4              MR. SER:  Yes, Your Honor.
 5              THE COURT:  Okay.  Any additional questions you would
 6   like me to ask the defendant, Mr. Andrews?
 7              MR. ANDREWS:  No, Your Honor.
 8              THE COURT:  Mr. Ser, are there any additional
 9   questions you would like me to ask the defendant?
10              MR. SER:  No, Your Honor.
11              THE COURT:  Then finally, Mr. Ser -- well, I can't
12   remember now whether I asked this question.  I apologize.  If I
13   did, I am asking it again.
14              Mr. Andrews, do you believe there is a sufficient
15   factual predicate for the guilty plea?
16              MR. ANDREWS:  Yes, Your Honor.
17              THE COURT:  And you agree with that, Mr. Ser?
18              MR. SER:  I do.
19              THE COURT:  And, finally, Mr. Ser, do you know of any
20   valid defense that would prevail at trial or any reason why your
21   client should not be permitted to plead guilty?
22              MR. SER:  No, Your Honor.
23              THE COURT:  Okay.  Based on the defendant's responses
24   to my questions and my observations of his demeanor, I find that
25   he understands his rights and is waiving them knowingly and
```

1  voluntarily with an understanding of the consequences of his

2  guilty plea, including the potential sentences that may be

3  imposed.

4          I further find that the guilty plea is voluntary and

5  did not result from force, threats or promises other than

6  promises in the plea agreement; that the defendant has admitted

7  he is guilty as charged in Count One of the Information, and

8  that the plea is supported by an independent factual basis for

9  each and every element of the crime charged.

10         Accordingly, I accept the guilty plea and adjudge the

11 defendant guilty of the charge in Count One.  I will direct the

12 probation department conduct a presentence investigation and

13 prepare a presentence report.

14         Mr. Da Silva, you are going to be interviewed by a

15 probation officer as part of that presentence investigation

16 process.  When that happens, your lawyer or lawyers will be with

17 you.  Just make sure that if you do speak to the probation

18 officer, that anything you say is truthful and accurate because

19 whatever you say is going to be reported to me, and if the

20 probation officer believes you are being truthful, that will be

21 reported to me.  It will also be reported to me if the probation

22 officer feels that you are being untruthful.  So I am directing

23 you to be truthful and accurate.  Will you do that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  I also want you to know that the

1  presentence report that the probation officer will prepare is

2  important to me in deciding what sentence to impose.  Since it's

3  important to me, it's important to you, and specifically it's

4  important that you read the report carefully and discuss it with

5  your attorney before your sentencing date.  If there are any

6  mistakes in the report, tell your lawyer about them so that he

7  or they can bring them to my attention before I impose sentence.

8  Will you do that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Also, both you and your attorney will have

11  the right to speak on your behalf before I impose sentence, and

12  I think I was given a date here if I can find it.

13          How about May 21st, 2020, at 11:00 a.m.?

14          MR. ANDREWS:  Works for the government.

15          MR. SER:  That's fine, Your Honor.

16          THE COURT:  Okay.  Sentencing is scheduled for May 21,

17  2020, at 11:00 a.m.  The deadline for any written submissions by

18  the defendant ordinarily is ten days.  We are going to make it

19  two weeks in this case, so any submissions due two weeks before

20  sentencing, which in this case is May 7th; and any response from

21  the government is due one week before sentencing.  So that would

22  be May 14th.  So if the sentencing date changes, that would not

23  change the -- well, it would change, obviously, the date for

24  your submissions, but your submission is due two weeks before

25  sentencing, Mr. Ser.

PROCEEDINGS

1          And, Mr. Andrews, yours is due one week before

2   sentencing.

3          Okay.  The defendant has been detained, as I

4   understand it, during the course of this case.  That will

5   continue.

6          Is there anything else that we need to do today?

7          MR. ANDREWS:  No, Your Honor.

8          MR. SER:  No, Your Honor.

9          THE COURT:  All right.  Thank you all.  I will see you

10  on May 21st at 11:00 a.m.

11         THE DEPUTY CLERK:  All rise.  This court will be in

12  recess.

13         (Time noted:  1:36 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25